**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **TROY ALEXANDER RICHARDSON,**<br><br>　　　　　Plaintiff**,**<br><br>　　vs.<br><br>**CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, ET AL.,**<br><br>　　　　　Defendants**.** | CASE NO. 18-cv-04620-YGR<br><br>**ORDER DENYING PLAINTIFF'S AND DEFENDANTS' CROSS-MOTIONS FOR PARTIAL SUMMARY ADJUDICATION ON CALCULATION ISSUE; EXTENDING TIME TO FILE AMENDED COMPLAINT; AND SETTING FURTHER CASE MANAGEMENT CONFERENCE**<br><br>Dkt. No. 81, 91 |

Plaintiff Troy Richardson brings this action pursuant to 42 U.S.C. section 1983 and the statutory and common law of the state of California alleging that defendants California Department of Corrections and Rehabilitation ("CDCR") and the individual CDCR employees named. Plaintiff alleges that he was released from prison after serving the prison sentence allotted to him by the applicable Court orders, rules, and regulations, but was reincarcerated wrongly and treated as an escaped prisoner. (*See* operative Third Amended Complaint, Dkt. No. 57.) At the request of the parties, the Court permitted limited, early cross-motions for partial summary judgment on the issue of the correct release date. (*See* Order Vacating Trial and Pretrial Deadlines, Dkt. No. 79.)

Plaintiff filed his motion for partial summary judgment on October 21, 2019 (Dkt. Nos. 81-84) seeking adjudication of the correct calculation of plaintiff's resentencing and a determination that, as a matter of law, CDCR re-calculated plaintiff's sentence on September 12, 2016, without legal authority to do so. Defendants CDCR, Gipson, Hatton, Pina, Weeks, Castaneda, Marion, Montoya, Quintero, Johnston, Lebard, Davis, Beeson, Moreno, Burris, Bomgardner, Ouye, Alfaro, Fernandez, Bautista, Bjorgum, Rios, Allison, Cullen, Gold, Kunz, Jones, Macomber, White, and Smalley (collectively, "defendants") filed their cross-motion for summary adjudication on November 4, 2019 (Dkt. No. 91) contending that plaintiff's entire incarceration was lawful and

therefore all of plaintiff's claims fail as a matter of law.[1] On December 10, 2019, the Court heard oral argument regarding the limited question of the calculation of plaintiff's release date.

Having carefully considered the papers submitted in support of and in opposition to the motions, the admissible evidence in the record,[2] the parties' arguments at the hearing, and the pleadings in this action, and for the reasons set forth below, the Court **DENIES** the scope of the summary adjudication order sought by each side in its motion, but finds, as a matter of law, that the earliest possible release date based upon his December 22, 2014 resentencing, was approximately February 10, 2019.

## I.  SUMMARY OF FACTS[3]

Plaintiff was charged with crimes in connection with a robbery that occurred on October 21, 2011. Plaintiff was taken into local custody technically as of October 25, 2011. On May 24, 2012, plaintiff pleaded guilty and was sentenced by the Honorable Michael N. Garrigan to ten years in prison—five years for his plea of guilty to second-degree robbery plus a five-year enhancement for his admission to a prior "strike" conviction. (Shyrock Decl. Exh. 1.) All remaining charges against Plaintiff were dismissed.[4] The original abstract of judgment ("AOJ") was dated June 6, 2012. The AOJ listed the enhancement as use of a firearm (under Penal Code § 12022.5(a)). The June 6, 2012 AOJ provided that plaintiff would receive credit for time spent in custody up to the date of sentencing – 212 days "actual local time" and 180 days "local conduct

---

[1] Defendants also moved for summary judgment on the grounds that they are entitled to qualified immunity. Because the Court had limited the issues to be considered in this early motion for partial summary to the release date calculation issue, the Court ordered stricken and did not consider the qualified immunity issue. (*See* Order issued November 14, 2019, Dkt. No. 98.)

[2] Defendants object to Exhibits U and V to counsel's declaration in support of plaintiff's motion for summary judgment (ECF No. 83-2 at 72, 74) because they lack foundation and are not authentic. (F.R.E. 901.) It appears that these documents represent counsel's interpretation of how CDCR's calculation procedures should have been applied to Plaintiff's sentence as described on the December 26, 2014 abstract of judgment. (ECF No. 83 ¶¶ 22-23.) The exhibits are not properly considered as evidence, but the Court nevertheless considers them as part of plaintiff's arguments on the calculation issue.

[3] Unless otherwise noted, these facts are undisputed for purposes of these motions.

[4] The parties agree that, due to the nature of the crimes to which he pleaded, plaintiff was limited to 15% credit earning, meaning he would be required to serve eight-and-a-half years of a ten-year sentence. *See* Cal. Penal Code § 2933.1.

credit" for a total of 392 days of credit.

## A. April 2013 Resentencing

On April 22, 2013, plaintiff was re-sentenced by the Honorable Franklin M. Stephenson as a result of a deal plaintiff reached with the prosecutor to reduce his sentence by approximately one year based on plaintiff's cooperation in an unrelated case. (Shryock Decl. Exh. 2.) The transcript of the sentencing hearing states that Judge Stephenson ordered that plaintiff be given "actual days credit, pursuant to the agreement of the parties in court, of 863 actual days, 132 good time credits, for a total of 993 (sic) days credit for time served." (*Id*. at 3:27-4:1, "sic" notation in original transcript.) The AOJ dated April 23, 2013 states, at line 8, "STIPULATED THAT DEFT. RECEIVE CTS IN THE AMOUNT OF 863 DAYS" and the boxes on the bottom of the form state "credit for time spent in custody Total days: 993 included: actual local time: 863 local conduct credits: 130." (Helbraun Decl. Exh. C.)

On September 23, 2014, a CDCR Records Analyst in CDCR's Legal Processing Unit ("LPU") wrote to Judge Stephenson, seeking clarification of two issues related to the April 23, 2013 AOJ: (1) the number of pre-sentence credit days; and (2) the five-year enhancement was not a term authorized by Penal Code section 12022.5(a). The CDCR Records Analyst stated that the court had "granted too many actual days" credits when it gave plaintiff 863 total days, since plaintiff had not been in custody 863 actual days, but only 549.[5] (Helbraun Decl., Exh. D.) The letter cited two cases for the argument that "when the trial court resentences a defendant who has already commenced serving a term for the crime, the trial court should only compute the actual time spent in prison following the initial sentencing." (*Id*.) The letter continued:

> It is the responsibility of the [CDCR] to determine the amount of worktime credit to which an inmate is entitled from the date of initial sentencing. At the time of defendant's original sentencing, he was granted a total of 392 days (212 actual and 180 conduct). The CDCR will calculate and apply the appropriate amount of good time/work time credits.

---

[5] The Court notes that the difference between 863 and 549 is 314. Plaintiff's credits had been increased by 314 in the April 23, 2013 AOJ as part of an agreement for plaintiff's cooperation with the prosecution in an unrelated criminal matter. (*See* Defs' Response to P's Separate Statement at Facts 5-8.)

3

(*Id.*) As to the second issue, the CDCR Records Analyst noted that the April 23, 2013 AOJ gave a five-year enhancement under Penal Code section 12022.5(a), but the statute only allowed for enhancements of 3, 4, or 10 years. (*Id.*)

On October 23, 2014, Judge Stephenson set a new hearing regarding the enhancement question and issued an amended AOJ which recited the sentencing date as April 22, 2013, reset total days credits to 392, the actual local time as 212 and the local conduct at 180 *nunc pro tunc* as they had appeared on the original June 6, 2012 AOJ. (Helbraun Decl., Exh. E.)[6]

### B. December 2014 Resentencing and Plaintiff's Release

On December 22, 2014, Judge Stephenson held a further sentencing hearing. (Shryock Decl. Exh. 3.) At the hearing, Judge Stephenson and the parties discussed the sentencing issue. Jacobsen, counsel for plaintiff in those proceedings, stated:

> MR. JACOBSEN: Doug Jacobsen for Mr. Richardson, who is present in custody.
> Your Honor, at this time we are in receipt of a letter from the Department of Corrections regarding an error on the sentencing. And after discussions with court and counsel, I believe we're prepared to correct the error. And the gist of the correction would be that Mr. -- Mr. Richardson, on the date in question, was given five years consecutive, 12022.5, which only calls for sentences of three, four and ten. So the five was a mistake.
> Mr. Richardson is agreeable that the sentence would be changed to the midterm of four years, which would make his total sentence nine years. However, on the extra one year credit that was stipulated to be added on April 22nd of 2013, he would agree to split that and take only half of that in terms of the credit, which we determined he was entitled. And that would be 159 days, which is half of the 318. Therefore, as I calculate it, Your Honor, when he was originally sentenced on May 24th of 2012, he had 212 days credit at that time. After that, he was brought back and resentenced on the 22nd of April, 2013. He had served 333 more days actual time. He would now agree to a stipulated 159 additional days, which is half of 318. And since April 22nd, 2013, to today, he has served an additional 609 days. I added up the 212 the 333 the 159 and the 609. It came to 313 [sic].[7]
>
> THE COURT: Actual days**?**
>
> MR. JACOBSEN: Actual days. So he would agree to a sentence of five years on the robbery, four years on the firearm, and 313 [sic] days of actual credit.

---

[6] The Court notes that these credit days are identical to the original sentencing on May 24, 2012, as set forth in the June 6, 2012 AOJ, and did not reflect any time served or credits accrued in the interim.

[7] The sum of 212, 333, 159, and 609 is 1,313 not 313.

4

| | |
|---|---|
| 1 | THE COURT: Is that at 80 percent? |
| 2 | MR. RASMUSSEN: Eighty-five. |
| 3 | THE COURT: He would be given an additional 47 on top of the 313? |
| 4 | MR. JACOBSEN: Well, it would be more than that. It's 85 percent of 313 -- 1313. 1313. |
| 6 | THE CLERK: He said 313. |
| 7 | THE COURT: So it's 3,313? |
| 8 | MR. JACOBSEN: No. 1,313. Let me show you my math, Judge. |
| 9 | THE COURT: Thank you. Thank you. So 1,313. |
| 10 | MR. JACOBSEN: Yes. |
| 11 | THE COURT: Okay. Thank you. Which would be an additional 197. For a total of 1,510. All right. Is that what you want to do here today, Mr. Richardson? |
| 13 | THE DEFENDANT: Yes, sir. |

(*Id*. at 3:9-4:27.) The new AOJ issued December 26, 2014, indicated "credit for time spent in custody total days: 1,510, actual local time 1,313 and local conduct credits: 197." (Helbraun Decl. Exh F.) The minutes from that hearing state:

> ORIGINAL SENTENCE OF 4/22/13 IN FULL FORCE AND EFFECT EXCEPT AS MODIFIED HEREIN
>
> AS TO COUNT 1 : IMPOSED THE UPPER TERM OF 5 YEAR(S), 0 MONTH(S), 0 DAY(S).
>
> PLUS ENHANCEMENT FOR ALLEGATION NUMBER 1 AS TO COUNT 1 PURSUANT TO PC 12022.5(A) OF 4 YEAR(S), 0 MONTH(S)
>
> DEFENDANT TO SERVE TOTAL PRISON OF 9 YEARS, 0 MONTHS. TOTAL AGGREGATE TERM IS 9 YEARS.
>
> CREDIT FOR TIME SERVED: LOCAL 1,313 PLUS 197 (GOOD TIME/WORK CREDIT) PLUS 0 CRC/CDC PLUS 0 (GOOD TIME/WORK CREDIT) - TOTAL 1,510 DAYS

(*Id*.)

On January 22, 2015, CDCR noted on plaintiff's "Inmate Record Summary" that it had "received amended AOJ from San Joaquin Co. case #SF116798A granting additional pre-sentence credits," and "EPRD recalculated to reflect change." (*Id*., Exh. K at 15, emphasis supplied.) On or

about December 21, 2015, a "Release Program Study" packet was generated by CDCR stating that Plaintiff's Earliest Possible Release Date or "EPRD" was July 14, 2016. (*Id*., Exh. L.) On that same date, plaintiff signed CDCR Form 1515 stating that he would be "released to parole supervision effective July 14, 2016." (*Id*., Exh. L.)

On February 27, 2015, a CDCR Records Analyst sent a letter to the Chief Assistant Attorney General for the Criminal Division enclosing the September 23, 2014 letter previously sent to Judge Stephenson. (Helbraun Decl. Exh G.) The letter states:

> [t]he resentencing Abstract of Judgment reflects a total of 1510 credits (1313 actual and 197 conduct). However, the date of offense to the date of resentence is only 549 actual days. The case is being referred to your office for review and the appropriate action.

(*Id*.) The record herein does not indicate that the Attorney General's office responded to this referral.

According to CDCR records, CDCR performed 60-day and 10-day audits of plaintiff's release date on May 26, 2016 and July 1, 2016, respectively, in which CDCR recalculated the release date and each time confirmed plaintiff's scheduled release date for July 14, 2016. (*Id*., Exh. M; Exh. K at 17.)

Plaintiff was released on parole on July 14, 2016. (*Id*., Exh. K at 17.)

**C.  Post Release Audit and Plaintiff's Reincarceration**

At 1:03 p.m. on September 12, 2016, CDCR Records Analyst Corinne Bjorgum sent an email to some 28 or so other CDCR staff stating that "On 7/14/2016, Richardson was released from Salinas Valley State Prison to San Francisco 4, 923 days early" and "*the calculated release date should be 1/23/2019*." (*Id*., Exh. N, emphasis supplied.)[8] The email further stated:

> At resentencing, the Court granted CDCR credits. The resentence credits were applied, however, the term start date was not changed accordingly.

(*Id*.) At the end of the email, Bjorgum stated: "I have requested the immediate issuance of an

---

[8] The text here apparently means that plaintiff was released to a location referred to as "San Francisco 4" and that Bjorgum believed he was released 923 days early (not that he was released *4*,923 days early).

6

Early Release Warrant (PC5054.1) via the Warrant Unit. Once taken into custody, please provide me with an email notification." (*Id*.)

An hour after Bjorgum sent her email on September 12, 2016, CDCR Records Analyst Jose Tovar faxed a letter to Judge Stephenson. (*Id*., Exh. O.) The letter was dated September 12, 2016, and the subject line stated, in part:

> Re: RICHARDSON, TROY ALEXANDER        PLEASE EXPEDITE
> Date of Sentence: May 24, 2012
> ***Re-Sentence: April 22, 2013***

(*Id*., emphasis supplied.) The letter read, in part:

> Dear Judge Stephenson:
>
> A review of the documents delivered with the above-named inmate indicates the Abstract of Judgment and/or Minute Order may be in error, or incomplete, for the following reasons:
>
> The Abstract of Judgment and Minute Order reflect Credits as 1,313 Actual plus 197 Local Conduct for a total of 1,510 days credit. However, section 8 (other orders) of the Abstract of Judgment reflects that it is stipulated the defendant receive CTS in the amount of 863 days. Please clarify.
>
> **May we please request an expeditious response from the Court as the defendant release date is imminent.**

(*Id*., emphasis in original.) The fax cover page stated:

"******PLEASE EXPEDITE DEFENDANT MAY STILL OWE PRISON TIME *****"

(*Id*.)

That same day, an abstract of judgment (dated September 12, 2016) was entered by Judge Stephenson. (*Id*., Exh. P.) The notation on Line 8 ("CTS [credit for time served] in the amount of 863 days") was deleted, and the AOJ was otherwise identical to the one that had been issued December 26, 2014. (*Id*., Exh. F, Exh P.) The September 12, 2016 AOJ stated the "date the sentence was pronounced" as "04-22-13" and total credits for time spent in custody of 1,510 days including actual local time of 1,313 and local conduct credits of 197. (*Id*.)

On September 12, 2016, Richardson was seized and returned to CDCR custody pursuant to the warrant directed by Bjorgum. The record on this motion indicates that Richardson was reincarcerated and in custody at San Quentin from September 15, 2016, to June 2, 2017, at which time he was transferred for a court appearance. (*Id*., Exh. K at 7.) On June 5, 2017, Richardson

was resentenced in San Joaquin Superior Court by the Honorable Ronald Northrup based upon the stipulation of counsel to "2,860 actual days credit with 429 Good Time/Work Time credit for a total of 3,289 days" such that all Richardson's sentence was deemed served and he was released from custody. (*Id*., Exh. Q.)

## III. DISCUSSION

### A. Legal Framework

Under California Penal Code[9] section 5054.1, CDCR has the power to order a warrant for return to custody of any state prisoner "released prior to his or her scheduled release date who should be returned to custody." The issue in this motion is whether CDCR correctly calculated plaintiff's release date such that he should have been returned to custody.

CDCR calculates an inmate's release date based upon the information provided by the court in the abstract of judgment. The maximum release date is the date of release based upon the full term imposed by the court, taking into consideration pre- and post-sentence credits, including vested credit. *See* 15 Cal. Code Regs. § 3371.1(c)(3)(B).[10] The "earliest possible release date" is the "earliest date an inmate serving a determinate term may be released . . . . [and] is a fluid date [since] credit may be earned and forfeited throughout the inmate's incarceration." *Id*. at §3371.1(c)(3)(A). Pre-sentence credit is determined by the sentencing court pursuant to sections 2900.1, 2900.5, 2933.1, and 4019. *Id*. at § 3371(c)(1)(A). Defendants also may accrue credits, reducing their total time to be served, based on their conduct during their time in state prison referred to as "worktime" credits. Cal. Penal Code § 2933. Pursuant to section 2933.1, persons convicted of a violent felony shall accrue no more than 15 percent of worktime credit. The parties

---

[9] Further statutory section references are to the California Penal Code unless otherwise stated.

[10] The Court notes that the current version of 15 Cal. Code Regs. § 3371.1 superseded the version in effect at the time of plaintiff's offense but describes the process for calculation of the release date consistent with the process described in both sides' briefs. The current version of the regulation defines "vested credit" as "Good Conduct Credit awarded by the department pursuant to section 3043.2 of this title based on the number of actual days served in county jail between the date of the inmate's sentencing and the date the inmate is received into the jurisdiction of the department." 15 Cal. Code Regs. § 3371.1(c)(1)(C).

8

here agree that plaintiff was subject to the 15 percent limitation. (*See* P's Response to Def's Facts, Dkt. No. 96-4, Fact 3.)

California Penal Code section 1170(d)(1) provides that the court may "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, *provided the new sentence, if any, is no greater than the initial sentence*." (emphasis supplied). Section 1170(d)(1) further provides that "[t]he court resentencing under this paragraph may reduce a defendant's term of imprisonment and modify the judgment, including a judgment entered after a plea agreement, if it is in the interest of justice." "Where a defendant has served any portion of his sentence under a commitment based upon a judgment . . . modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts." Cal. Penal Code § 2900.1. "It is the duty of the court imposing the sentence to determine the date or dates of any admission to, and release from, custody prior to sentencing and the total number of days to be credited. . . ." Cal. Penal Code § 2900.5(d); *see also* Cal. Code Regs. tit. 15, § 3043.1 ("Credit applied prior to sentencing is awarded by the sentencing court pursuant to sections 2900.1, 2900.5, 2933.1, and 4019 of the Penal Code.")

The regulations regarding computation of the term of incarceration and release date in effect at the time of plaintiff's offense stated, in pertinent part:

> . . . the following credit issues shall be referred by the [CDCR] to the sentencing court:
> . . . . (2) When an inmate's case was resentenced and the court credited the inmate with time being served in the department.
> . . . . (4) Cases where legal documents reflect any conflict in credit.

(Helbraun Decl., Exh. S [excerpts of Cal. Code of Regs.]); *see also* 2013 CA REG TEXT 321370 (NS) (noting no change to 15 CCR § 3371.1 subsection (d) as part of the 2013 amendments).

A sentencing order may not be modified other than through due process. *In re Williams*, 83 Cal. App. 4th 936, 942 (2000), *as modified on denial of reh'g* (Oct. 18, 2000). Thus, the California Court of Appeal in *Williams* held:

> Before the trial court could correct the sentence in accordance with the department's suggestion, the matter should have been returned for a hearing with

9

> petitioner present. Striking the presentence credit materially changes the plea bargain and thus involves a liberty interest. Therefore, fundamental due process entitled petitioner to an opportunity to be heard before he could be deprived of the presentence credit he received when sentenced on June 13, 1996.

*Id*. (internal citation omitted). Neither CDCR's recommendation that a sentence should be corrected, nor a trial court's adoption of that recommendation, comports with due process in the absence of a notice and opportunity to be heard. *Id*.

Further, CDCR "does not determine and award pre[-]sentence credits; the sentencing court does." *People v. Brown*, 54 Cal. 4th 314, 321 (2012), *as modified on denial of reh'g* (Sept. 12, 2012). Thus, in *Tinker*, the California Court of Appeal rejected the argument CDCR had the authority to calculate or grant credits pursuant to former section 2933, holding that "it is the trial court, not the CDCR, that is positioned to determine whether a defendant is entitled to conduct credit for the period of local presentence confinement." *People v. Tinker*, 212 Cal. App. 4th 1502, 1509 (2013) ("defendant was entitled to have the trial court credit him with the conduct credit authorized by former section 2933, subdivision (e).")

The CDCR "Application of Credits for Cases That Have Been Resentenced Handbook" states "[h]ow the Court applies credits at the resentence hearing determines how the CCRA [Correctional Case Records Analyst] will process each individual case." (Helbraun Decl., Exh. H at 3.) "[W]hat the Court indicates as credits will determine if it is necessary to change the term starts date or if the term starts date remains the same." (*Id*. at 4.) The Handbook discusses three different general scenarios and whether the "Term Starts Date" should be changed, depending on the circumstances:

> [1] If the credits on the resentencing AOJ are the same as the original AOJ . . . [t]he original Terms Starts Date remains the same . . . .
>
> [2] If the credits on the resentencing AOJ include actual time served in CDCR, but no CDCR work time credit[, t]he Term Starts Date will be changed to the date the inmate returned to any CDCR facility after resentencing . . . .[ and n]et worktime credit for the time served in CDCR (including credit losses and credit restorations) shall be administratively applied. . . . When calculating the work time credit, the CCRA will take the amount of actual CDCR time the inmate is entitled to and divide by the appropriate earning status[11]. . . .

---

[11] The earning status for a person with a violent offense (like plaintiff here) was "5.66 for 15 percent limitation (Credit Code 4/6 & 34/36)." (*Id*.)

10

[3] If the credits on the resentencing AOJ are changed and include CDCR actual and work time credit[, t]he term starts date shall be changed to the date the inmate returned to any CDCR facility after resentencing . . . . [and o]nly the credit on the resentencing AOJ shall be applied.

(*Id*. at 4-6, emphasis supplied.)

The Handbook directs that "[w]hen, after researching the credits, it cannot be determined how the court arrived at the amount of credit awarded, apply the total credits according to the court order." (*Id*. at 6.) The Handbook provides that "[w]hen too much CDCR worktime credit is awarded, refer to LPU only if there is more than 60 days of excessive credit." (*Id*.) The Handbook reiterates that "[w]hen a case is referred to the LPU for excessive credits, the amount of credit awarded by the court shall be applied until such time that an amended court order is received." (*Id*. at 6.)

### B. Parties' Calculations

Plaintiff contends that CDCR acted unlawfully when it recalculated his sentence two months after his release in July 2016. The December 2014 AOJ did not allocate any of his credited time to time in CDCR custody. Even after CDCR wrote to the sentencing judge to correct the December 2014 AOJ, the only revision ordered by the court did not change the way any of the credits were allocated. Citing *Brown* and *Tinker*, plaintiff contends that CDCR was required to treat all of plaintiff's time credits as local, pre-sentence credits under Penal Code 4019 and apply them without resetting the Term Starts Date. Plaintiff argues that the court did not award any CDCR credits that arguably would be counted twice. And, to the extent that any of the time credited by the court was incorrect, CDCR was obligated to seek a correction from the court rather than change the calculation of time to be served on its own.

Defendants counter that, when CDCR calculated the release date as July 14, 2016, its failure to change the "Term Starts Date" from April 22, 2013 to December 22, 2014 meant that plaintiff incorrectly received credit for the time he served in CDCR between those dates twice. As a result, he was released more than two years too early, an error that was only caught in September 2016 when CDCR Analyst Bjorgum audited his file. CDCR contends that it is proper for a sentence to be audited and recalculated, even after the subject has been released from custody. All

1,510 credits were applied here when the recalculation was done – the only change was adjusting the "Term Starts Date" so that there was no double-counting of credits for time in CDCR custody.

Bjorgum testified that when she examined the credits as stated on the December 2014 AOJ, she did not take into account that Richardson had been given credits for cooperation with the District Attorney. (Helbraun Supp. Decl., Dkt. No. 96-2, Exh. W at 233:23-234:10.) Defendants have not offered the details of the actual calculation on which Bjorgum based her email and CDCR caused the reincarceration warrant to issue.[12] Instead, defendants offer a completely different calculation done *after* plaintiff's reincarceration, on September 12, 2016. (Shryock Supp. Decl., Dkt. No. 99-1, Exh. 5 [calculating an earliest possible release date of April 10, 2019].) Thus, it is unclear from the record before the Court how, on September 12, 2016, Bjorgum reached the conclusion that plaintiff had been released 923 days early (*i.e.*, a January 23, 2019 release date).[13]

### C. Analysis

Based upon the record presently before it, the Court concludes that plaintiff's correct earliest possible release date, taking into account the credits awarded on the December 2014 AOJ,

---

[12] The record does contain the referral to the LPU one week after the resentencing in April 22, 2013, during which the original cooperation credits were awarded. That document shows a credit breakdown of:
- 2900.1 (served under prior judgment) – 332
- 2900.5 (presentencing time) - 423
- 4019 (local good conduct) = 180
- 2931 (CDCR good conduct at 15%) = 58

(Helbraun Supp. Decl. at Exh. X, LPU referral dated 4/29/13 referred by K. Gutierrez.) The memo indicates the analyst identified "211 excess court credits." (*Id.*) The document demonstrates that CDCR did not account for the cooperation credits awarded in its breakdown.

Similarly, the September 23, 2014 CDCR letter to Judge Stephenson stated the court had "granted too many actual days" credits when it gave plaintiff 863 total days, since plaintiff had only been in custody 549 days. (Helbraun Decl., Exh. D.) This subsequent letter shows that CDCR continued to disregard the reason for the change in credits in the April 2013 resentencing, *i.e.*, the 314 days credited at that time based upon plaintiff's cooperation, which precisely explained the discrepancy (*i.e.*, 836-549=314).

[13] While defendants offered a variety of scenarios to explain different release date calculations at the hearing on this matter, they conceded at the hearing on December 10, 2019 that their current scenario explaining how they believe the original error arose was new and not even explained in their briefing on the motion. Likewise, none of the scenarios defendants offered at the hearing align with Bjorgum's asserted January 23, 2019 release date, which is the calculation that gave rise to plaintiff's reincarceration.

12

and the extent to which they overlap or double-count plaintiff's CDCR actual time in custody would have been approximately February 10, 2019. This differs from the calculation CDCR used to seek a reincarceration warrant, but only minimally and in plaintiff's favor. Plaintiff was released some 940 days earlier than he should have been because the prior earliest possible release date of July 14, 2016 was calculated in error. The Court's reasoning is as follows:

- The December 2014 AOJ fixed the error in the prior judgment regarding the time for the enhancement, reducing the total sentence to nine years.
- The December 2014 AOJ reduced the amount of credit for cooperation in the unrelated case to 159 days, with the agreement of counsel and of Richardson himself, as stated on the record at the hearing, presumably in light of the totality of the issues being resolved (*see* Shyrock Decl. Exh. 3 [12/22/14 hearing transcript] at 3:22-23; 4:25-27).
- The December 2014 AOJ incorporated CDCR worktime credit at 15 percent when it included 197 days credit for plaintiff's total time in custody up to that date, as stated on the record in the hearing. (*Id.* at 3:9-4:27 (defense counsel, judge, and Richardson agree that 85% earning on 1,313 "would be an additional 197.")[14]
- As of December 22, 2014, plaintiff had served a total of 1154 days in custody: 212 days of pre-sentence custody, 333 days between the original sentencing on May 24, 2012 and the April 22, 2013 resentencing, and 609 days between April 22, 2013 and December 22, 2014.

| Term Starts Date | 12/22/2014 |
|---|---|
| Sentence (9 years) in days | 3,287 |
| Subtract credits reflected in the December 2014 AOJ, *i.e.*:<br>    212 (10/25/11-5/23/12)<br>    333 (5/24/12-4/22/13)<br>    609 (4/23/13-12/22/14)<br>    159 (cooperation in other case)<br>(subtotal of 1,313 days)<br>plus 197 days "good time" credit | 1,510 |
| **Total days left to serve**<br>(Sentence days minus credits) | =1,777 |
| **Maximum release date**<br>(Term Starts Date 12/22/2014 plus days left to serve): | 11/3/2019 |
| **Possible credits going forward**<br>(1,777 days left to serve/6.66) | 267 |
| **Earliest Possible Release Date** | **2/10/2019** |

---

[14] This amount of good time credit appears to be based on the simple calculation that 15 percent of 1,313 is 196.95. The Court notes that the straightforward calculation of 15% of the time served, as stated in Cal. Penal Code section 2933.1, results in a different number than the formula apparently employed by CDCR for calculation of such credits (*i.e.*, dividing by 5.66). *See* Cal. Penal Code § 2933.1 (persons convicted of certain violent felonies "shall accrue no more than 15 percent of worktime credit, as defined in Section 2933" [which would otherwise award six months credit for every six months served]).

13

## IV. CONCLUSION

For the foregoing reasons, both sides' motions for partial summary judgment are **DENIED** based upon the record before the Court and the scope of the relief sought in the motions.

Nevertheless, as a matter of law, the Court finds that, based upon the record presently before it, plaintiff's earliest possible release date was February 10, 2019. The Court does not reach the questions of whether CDCR was authorized to make this determination prior to obtaining clarification of the abstract of judgment from the sentencing judge, whether defendants are liable for the claims alleged by plaintiff based on the calculation, or whether defendants may avoid liability based upon qualified immunity or any other defense.

The Court previously ordered that plaintiff must file an amended complaint no later than January 10, 2020. (*See* Dkt. No. 106.) In light of the Court's ruling herein, the Court extends plaintiff's deadline to file an amended complaint to **January 24, 2020**. Defendants shall file their responsive pleadings no later than **February 7, 2020**.

The Court **SETS** a further case management conference for Monday, **March 2, 2020**, at 2:00 p.m. in Courtroom One, U.S. District Courthouse, 1301 Clay Street, Oakland, California. An updated joint case management statement shall be filed seven days in advance of the conference.

This terminates Docket Nos. 81 and 91.

**IT IS SO ORDERED.**

Dated: January 9, 2020

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**